Filed 12/23/14  P. v. Vega CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050097 |
| v. | (Super. Ct. No. 12CF1176) |
| JUAN MANUEL VEGA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

Appellant Juan Manuel Vega was convicted by a jury of sexual assaults upon his two daughters, ages eight and seven. He was sentenced to 50 years to life in prison, comprised of consecutive sentences of 25 years to life sentences on one count pertaining to each girl.

We appointed counsel to represent him on appeal. Counsel filed a brief which set forth in concise and well-articulated detail the facts of the case. Vega was invited to express his own objections to the proceedings against him, but did not. Under the law, this put the onus on us to review the record and see if *we* could find any issues that might result in some kind of amelioration of Vega's lot. (*People v. Wende* (1979) 25 Cal.3d 436.) It should be emphasized that our search was not for issues upon which Vega *would* prevail, but only issues upon which he *might possibly* prevail.

We have examined the record and found no arguable issue. This is not surprising. In fact, it is what we find in the vast majority of cases in which appellate counsel files a *Wende* brief. Even the most cynical observer of the appellate system would have to recognize that appellate counsel has a financial incentive for finding issues. The simple matter is counsel makes more money if he/she finds an issue that is arguable than if he/she does not. So while it sometimes happens that an appellate court will find issues after appellate counsel has thrown in the towel, it is unusual. This case is not unusual – at least not in any way that would benefit Vega. We find no error in his trial and affirm the judgment against him.

FACTS

Appellate counsel has provided a fine description of the facts of the case. We can find no errors or omissions in that description, so, rather than try to improve upon it, we reproduce it here:

"Prosecution Evidence

"Appellant fathered three children with Lucia C. ("Lucia"), two daughters named N. and Samantha, and a son named Juan. At the time of trial in 2014, N. was

2

eight years old. In 2012, appellant, Lucia and their three children were all living together in one bedroom of a shared two bedroom apartment in Santa Ana.

"Lucia testified that on the evening of April 20, 2012, appellant asked her to go buy something at a store, which she did. When Lucia returned from the store, she entered their bedroom and saw appellant standing near the closet next to N., whose pants were down and who was pulling up her underwear. Lucia, who had never before suspected any sexual abuse of her children, immediately asked appellant what was going on, and appellant said nothing had happened. Lucia then pulled N. aside and asked her what had happened. N. appeared scared and was initially reluctant to say anything, but eventually said that appellant had done something to her that was of a sexual nature. Lucia then immediately called 911, and a recording of that call was played for the jury.

"When police arrived at their residence that evening in response to the 911 call regarding what Lucia saw occur between appellant and N., the police conducted recorded interviews of both N. and Samantha based on their training and experience, as well as based on what N. first told them. A few weeks later, on May 16, 2012, both N. and Samantha were interviewed again at a CAST facility by a social worker who specializes in sexual abuse crimes involving children.

"N. and Samantha both testified that what they told police at their apartment and the interviewer at the subsequent CAST interview about appellant touching them was the truth. A recording of each of these interviews was played for the jury.[1]

"In her police and CAST interviews, N. said that before her mom came home on the night the police arrived at their apartment, appellant took off her pants, masturbated himself, touched the inside of her vagina with his penis, and inserted his penis into her anus, which hurt. N. said appellant had touched her private parts a lot of

_____

"1   Both N. and Samantha were very young at the time of their interviews, and they understandably had difficulty at times articulating and explaining the events in question.

3

times previously and would always give her a dollar afterwards, although she was uncertain and unable to articulate when or how many times this occurred. N. also reported seeing appellant touching her sister Samantha.

"During her police and CAST interviews, Samantha described appellant placing his hard penis inside her mouth and inside her vagina, which felt bad and hurt. Samantha said she remembered appellant touching her on different days, and that appellant inserted his penis in both her mouth and vagina on the day the police came to her residence.

"DNA testing was performed on N., Samantha, and appellant. No semen was found on either of the girls. Vestibule and vulva swab samples were taken from both girls, and no foreign DNA was initially found on any of those samples.

"Because a female's vaginal and anal openings tend to contain very high concentrations of their own DNA that can mask the presence of other DNA, a special type of DNA testing called Y-typing was also performed that is able to exclude female DNA and isolate the presence of any male Y chromosomes. Upon such testing, it was determined the vestibule and vulva swab samples from N. contained some areas of possible male DNA, which was consistent with appellant's DNA to a frequency of 1 out of every 4000 males in the general population.

"A penile swab obtained from appellant revealed the presence of foreign DNA, which foreign DNA could not have come from either N. or Samantha individually, but could have potentially come from a mixture of both N. and Samantha's DNA.

"Appellant was interviewed by police on the night the police came to their apartment in response to the 911 call, and a recording of that interview was played for the jury. Appellant initially and repeatedly denied touching either girl in any sexual manner. Subsequently, appellant admitted touching both girls on their vaginal and anal areas with his hands, but denied any penetration. Appellant explained that he was himself molested as a child while in Mexico, and he sometimes got uncontrollable urges to touch his

4

daughters in a sexual manner. Subsequently, appellant admitted anal penetration of N. with his finger on one occasion when his finger slipped inside her anus. Appellant continued to deny any penetration with his penis, any oral copulation, or any other penetration."

## DISCUSSION

This was not a lengthy trial. After pretrial motions, 10 witnesses were called in what was essentially two days. Defendant did not testify, called no witnesses, and offered no evidence. But even the shortest trial presents evidentiary and procedural issues the trial judge must resolve, and even when appellate counsel is unable to identify any judicial calls that may arguably have resulted in prejudicial error, it is incumbent upon us to review the record ourselves.

We have done so in this case and find none. Mr. Vega did not make his decision not to testify until the conclusion of the prosecution case. Its consequences were carefully explained to him both before the trial and at the point at which counsel informed the court he would not be testifying. By all appearances, it was a thoughtful process culminating in an informed and well-advised decision. We find he clearly and intelligently waived his right to testify.

The court correctly resolved issues pertaining to the 911 call made by the children's mother and questions pertaining to the fresh complaint doctrine. Defendant's own statements were properly admissible against him. Counsel and the court succeeded in clarifying the information to remove ambiguity and properly screened and instructed the jury for Spanish speakers who would be required to accept translations of Spanish statements. References to appellant's prior domestic violence case were properly excluded.

5

The trial itself was uneventful and the sentencing decision well within the discretion of the trial judge. Appellant's representation at trial raises no issues. We simply cannot find anything here that might provide a basis for an appellate argument.

The judgment is affirmed.


BEDSWORTH, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.